**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JUSTIN COLE,

        Defendant.

No. CR 06-2046-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE AND THE GOVERNMENT'S RULE 104(a) MOTION FOR RULING ON ADMISSIBILITY OF EVIDENCE**

———————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A. Prior Convictions And Prior Drug Activities* . . . . . . . . . . . . . . . . . . 7
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 7
            *a. Cole's argument* . . . . . . . . . . . . . . . . . . . . . . . 7
            *b. The government's argument* . . . . . . . . . . . . . . . . . 8
            *c. Cole's reply* . . . . . . . . . . . . . . . . . . . . . . . . 10
        *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            *a. Rule 104* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            *b. Rule 404(b)* . . . . . . . . . . . . . . . . . . . . . . . . 12
                *i. Evidence of prior convictions* . . . . . . . . . . . . 13
                *ii. Evidence of other "bad acts"* . . . . . . . . . . . . 16
            *c. Res gestae and direct evidence* . . . . . . . . . . . . . . . 20
    *B. Allegedly Exculpatory Hearsay Statements* . . . . . . . . . . . . . . . . . 23
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 23
            *a. The government's argument* . . . . . . . . . . . . . . . . 23

|   | | b. | Cole's response | 24 |
|   | 2. | | Analysis | 25 |
|   | | a. | Rule 804(b)(3) analysis | 26 |
|   | | | i. Statement against penal interest | 28 |
|   | | | ii. Unavailability of the declarant | 29 |
|   | | | iii. Trustworthiness | 31 |
|   | | b. | Rule 607 and 613(b) analysis | 31 |
|   | | | i. The pertinent rules | 32 |
|   | | | ii. The Buffalo analysis | 33 |
|   | | | iii. Foundational requirements for Rule 613(b) | 34 |
|   | | | iv. Rule 403 balancing | 35 |
|   | 3. | | Summary | 38 |
| C. | Cocaine Base And Crack Cocaine | | | 39 |
|   | 1. | | Arguments of the parties | 39 |
|   | | a. | The government's argument | 39 |
|   | | b. | Cole's response | 40 |
|   | 2. | | Analysis | 41 |
|   | | a. | "Cocaine base" within the meaning of § 841 | 41 |
|   | | b. | Probative value versus prejudice and confusion | 43 |

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

I n anticipation of the defendant's trial, set to begin on May 7, 2007, on charges of possessing with intent to distribute crack cocaine within 1,000 feet of a school, possessing marijuana, and maintaining premises for drug crimes, the parties have filed various evidentiary motions. The court now enters this ruling on the admissibility of the various categories of evidence in question to assist the parties with their preparations for trial.

2

# I. INTRODUCTION

## A. *Factual Background*[1]

On or about May 2, 2006, members of the Tri-County Drug Task Force executed a search warrant at defendant Justin Cole's residence in Waterloo, Iowa. At the time that the warrant was executed, Cole and Maurice Robinson were leaving the residence. Both men were detained. In the course of the search of the residence, law enforcement officers found a canister on the kitchen counter that contained 47.58 grams of a substance described by the government as "crack cocaine." The officers also found on a coffee table in the residence a baggie of cocaine residue, marijuana, and "blunts," which the court understands to be hollowed out cigars into which marijuana is stuffed to be smoked.

Cole declined to make any statements to law enforcement officers, but Robinson purportedly told the officers that he did not possess the crack cocaine seized from the kitchen. The government represents that it does not intend to call Robinson at trial, although the government did call Robinson to testify before a grand jury. Robinson purportedly denied before the grand jury that the crack cocaine in the residence was his. Cole, on the other hand, asserts that shortly after Robinson was allowed to leave the residence on the day of the search, he told Tasha Pates, Orenthal Jones, and Marcus Wright that the drugs in the residence were his, not Cole's.

According to the Superseding Indictment subsequently filed in this case, Cole has three relevant prior convictions, all in the Iowa District Court for Black Hawk County: (1) a conviction on or about October 19, 2000, for unlawfully possessing marijuana, a serious misdemeanor under Iowa law; (2) a conviction on or about February 5, 2004, for

---

[1]The essential factual background to the charges against defendant Justin Cole and the parties' evidentiary motions now before the court is drawn from the parties' factual statements in support of their motions.

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 3 of 46

possessing with intent to deliver crack cocaine, a Class C felony under Iowa law; and (3) another conviction on or about February 5, 2004, for unlawfully possessing marijuana, a serious misdemeanor under Iowa law. The government represents that it intends to offer into evidence in this case only certified copies of the judgments and sentences on these prior convictions.

The government represents that it intends to offer testimony from a cooperating witness that he had known Cole for a few years; that he lived next door to Cole at the time that the search warrant was executed on or about May 2, 2006; that he had used marijuana and cocaine with Cole at Cole's residence prior to execution of the search warrant; that he had observed Cole selling controlled substances and knew that Cole kept his controlled substances either in the kitchen or the bathroom; that Cole had a black scale; that he knows the source of Cole's controlled substances; and that he observed the traffic coming and going from Cole's residence. Finally, Cole was on parole for the February 5, 2004, convictions at the time of the offenses charged in this case, and the government represents that it intends to offer the testimony of Cole's parole officer that Cole had two urinalyses that tested positive for controlled substances, one on January 19, 2006, indicating use of crack cocaine, and one on March 9, 2006, indicating use of marijuana.

## B. Procedural Background

A Grand Jury handed down the original two-count Indictment (docket no. 1) in this case on September 7, 2006, naming Justin Cole as the sole defendant. A Grand Jury subsequently handed down a three-count Superseding Indictment (docket no. 20) on December 19, 2006, again naming Cole as the sole defendant. The charges against Cole, as they now stand, are the following: **Count 1** charges that, on or about May 2, 2006, Cole knowingly and intentionally possessed with intent to distribute approximately 47.58

4

grams of cocaine base, commonly known as crack cocaine, within 1,000 feet of a school after having previously been convicted on or about February 5, 2004, of the state felony charge of possessing with intent to deliver crack cocaine, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851, and 860 (possessing with intent to distribute crack cocaine within 1,000 feet of a school); **Count 2** charges that, on or about May 2, 2006, Cole knowingly and intentionally possessed an unspecified amount of marijuana after having previously been convicted on or about October 19, 2000, and February 5, 2004, of state serious misdemeanor charges of unlawful possession of marijuana, all in violation of 21 U.S.C. §§ 844 and 851 (possessing marijuana); and **Count 3** charges that, on or about May 2, 2006, Cole knowingly opened, maintained, managed, controlled, and made available for use, as a lessee with or without compensation, his residence in Waterloo, Iowa, for the purpose of unlawfully storing, distributing, and using cocaine base, commonly known as crack cocaine, and marijuana, all in violation of 21 U.S.C. § 856(a)(1) and (2) (maintaining premises for drug crimes). Cole pleaded not guilty to these charges on December 28, 2006. A jury trial in this matter is set for a date certain on May 7, 2007.

In anticipation of trial, the parties have filed various evidentiary motions. First, on April 1, 2007, Cole filed his Motion In Limine (docket no. 32), in which he seeks an order excluding evidence of his prior drug convictions and alleged drug activities pursuant to Rule 404(b) of the Federal Rules of Evidence. Next, on April 5, 2007, the government filed its Motion In Limine Regarding Alleged Statements Against Interest (docket no. 33), in which the government seeks an order excluding alleged hearsay statements of Maurice Robinson, who was also present at the house in Waterloo at the time that Cole was arrested, to the effect that the crack cocaine seized at the time was actually his, not Cole's. On April 5, 2007, the government filed, as part of its response to Cole's Motion In

5

Limine, its own Motion In Compliance With Federal Rule of Evidence 104(a) Regarding Government's Request For Pre-Trial Ruling On Admissibility Of Evidence (docket no. 34; stricken and refiled on April 13, 2007, as docket no. 42),[2] in which the government seeks leave to present evidence of the same prior convictions and alleged drug activities that Coles seeks to exclude, as well as other evidence of similar conduct, whether the evidence is exhibits or "testimonial." Cole resisted the government's first two evidentiary motions on April 14, 2007. *See* docket no. 44; docket no. 45. On April 23, 2007, the government filed its third evidentiary motion, its Motion In Limine Re: Cocaine Base And Crack Cocaine (docket no. 49), in which the government seeks an order excluding evidence or legal argument that the "cocaine base" that will be introduced at trial is not "crack cocaine. " Cole resisted the government's third evidentiary motion on April 24, 2007 (docket no. 50).

These matters are now fully submitted, and the court will resolve them now to assist the parties with their trial preparations.

## II. LEGAL ANALYSIS

Where appropriate, the court will address the parties' evidentiary issues "topically," rather than artificially separate the analyses of overlapping evidentiary motions. Specifically, the court will begin its analysis with the admissibility of evidence of Cole's

---

[2]The government's combined response and Rule 104(a) motion was stricken by order dated April 12, 2007 (docket no. 41), as a sanction for failing to redact personal data identifiers from accompanying exhibits as required by Local Rule 10.1(h). The government was, however, granted leave to refile its combined response and motion in full compliance with Local Rule 10.1(h), and the government did so on April 13, 2007 (docket no. 42).

6

prior drug convictions and alleged prior drug activities, which both Cole and the government have put at issue.

### A.  Prior Convictions And Prior Drug Activities

#### 1.    Arguments of the parties

##### a.    Cole's argument

Cole anticipates that the government will assert, and the government has actually now asserted, that evidence of his prior drug-related convictions, as set forth in the Superseding Indictment, and other alleged drug-related activity is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence to show his knowledge and intent in committing the drug crimes charged in this case.  The essence of Cole's argument to exclude this evidence is that the government's real motive in offering such evidence is to prove his propensity to commit the charged offenses, not for any permissible purpose under Rule 404(b).  He argues that Rule 404(b) has been improperly, if persistently, interpreted by various lower courts to be a rule of "inclusion" rather than a rule of "exclusion."  He argues, however, that the United States Supreme Court has made clear that evidence of other crimes and "bad acts" generally should not be admitted at all, because of its obvious prejudicial effect.  The Court, he argues, would not permit the admission of such evidence unless it is offered to rebut a defendant's presentation of evidence of good character or such evidence is found to be admissible after carefully weighing the obvious prejudicial effect of such evidence against its probative value.  Cole contends that various legal commentators have expressed concern about the courts' misapplication of Rule 404(b), which has turned the exceptions into the rule.  He contends, further, that certain experts have demonstrated with empirical evidence that juries are unduly affected by evidence of prior convictions.  He argues that limiting or cautionary

7

instructions are insufficient to remedy the prejudicial effect of "bad acts" evidence. Consequently, he contends that evidence of his prior convictions and alleged "bad acts" should be excluded from evidence in the trial of this case.

### b. *The government's argument*

In response to Cole's motion to exclude "bad acts" evidence and in support of its own motion to admit similar evidence, the government argues that, whatever Cole's concerns, Rule 404(b) has been interpreted by the Eighth Circuit Court of Appeals as a rule of inclusion, so that Rule 404(b) evidence should not be lightly excluded. Under the four-part test of the Eighth Circuit Court of Appeals for admissibility of evidence pursuant to Rule 404(b), the government contends that Cole's 2004 state felony conviction for possessing with intent to deliver crack cocaine is admissible, because Cole's knowledge and intent are relevant, where the government must prove on Count 1 that Cole intended to distribute some or all of the crack cocaine found in the kitchen; the prior conviction is for an offense similar in kind to the charged offense, involved the same controlled substance, and is not overly remote in time; the prior conviction is supported by sufficient evidence; and the potential for prejudice of evidence of the prior conviction does not substantially outweigh its probative value, because the government will offer only the certified judgment and sentence on the prior conviction, not evidence of the facts underlying the prior offense. Similarly, the government contends that evidence of Cole's 2000 and 2004 state misdemeanor convictions for possessing marijuana are admissible pursuant to Rule 404(b) to prove that Cole knowingly possessed marijuana, which is an element of the offense of possessing marijuana charged in Count 2 in this case; the prior convictions are for the same or a similar offense, involved the same controlled substance, and occurred within just a few years of the present offense; and the evidence of these prior

8

convictions is, again, sufficient and properly limited to certified copies of the judgments and sentences, thus eliminating the danger of unfair prejudice.

Addressing evidence that is not necessarily at issue in Cole's own evidentiary motion, the government also argues that evidence of Cole's drug use and drug-related activities, from a cooperating witness and a parole officer, is "testimonial" evidence admissible as "direct" evidence of the charged offenses and/or as Rule 404(b) evidence. The government contends that the cooperating witness's testimony is admissible to show Cole's actual illegal activity and, hence, is "direct" evidence, and is also admissible to show Cole's intent in committing the charged offenses and the lack of any accident or mistake, so that it is admissible pursuant to Rule 404(b).

The government contends that the parole officer's testimony concerning Cole's urinalyses, which were positive for controlled substances at issue in this case, also goes to Cole's knowledge that crack cocaine and marijuana were in his house. More broadly, the government asserts that evidence that Cole was on parole at the time that he allegedly committed the charged offenses is admissible for two reasons. First, the government contends that evidence of Cole's parolee status is inextricably intertwined with charged conduct, because it explains the circumstances surrounding why Cole was subjected to urinalyses, apparently asserting that Rule 404(b) is not applicable to such evidence. Second, the government contends that Cole's parolee status is admissible to demonstrate his knowledge and intent in committing the charged offenses, so that the evidence is admissible under Rule 404(b). The government argues that Cole's parolee status is also even closer in time to the offenses charged in this case than Cole's actual prior convictions, and thus, is more probative than an "aged" conviction might be. To put it another way, the government contends that Cole's parolee status indicates the proximity of Cole's prior conduct and demonstrates his knowledge of restrictions in effect at the time of his new

9

criminal conduct. The government also contends that, for purposes of admission of the evidence as either intrinsic evidence or as Rule 404(b) evidence, the highly probative value of Cole's parolee status is not outweighed by any potential prejudice from such evidence. The government contends that the prejudicial effect of such evidence will be mitigated by the limited evidence of Cole's parolee status and by a proper limiting instruction.

### c. Cole's reply

In his reply in further support of his own motion to exclude "bad acts" evidence, Cole argues that the prior acts are completely unrelated to the offenses charged in this case and, as such, evidence of those "bad acts" is simply "propensity" evidence. Explicitly applying the four-factor test for admissibility of "bad acts" evidence used by the government, Cole argues that the key factor is the potential for prejudice from admitting the evidence. In this case, because there were no controlled buys from Cole, no evidence in Cole's residence of drug trafficking, other than the drugs themselves, and evidence that another person was in the residence at the time, Cole argues that the jury will be grasping for some other evidence upon which to base a guilty verdict, and that is exactly why the "bad acts" evidence at issue here is prejudicial. Cole also argues that, where the defendant denies participation in the offense, intent or knowledge is not an issue, and bad acts evidence is not admissible, because it is irrelevant, citing *United States v. Jenkins*, 7 F.3d 803 (8th Cir. 1993). Here, Cole denies any participation in the offense of possessing with intent to distribute crack cocaine. Because knowledge and intent are the essence of a possession with intent to distribute charge, Cole argues that the court must be particularly careful in determining whether evidence ostensibly showing intent and knowledge is actually "propensity" evidence. Here, Cole argues that the "bad acts" evidence crosses the line into "propensity" evidence.

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 10 of 46

In response to the government's Rule 104(a) motion to admit other "bad acts" evidence, Cole argues that the evidence from a cooperating witness that the government seeks to admit is exactly the kind of evidence that this court excluded in *United States v. Harris*, 65 F. Supp. 2d 983 (N.D. Iowa 1999). Thus, he contends that the evidence from the cooperating witness should be excluded in this case. He also argues that testimony from his parole officer concerning his positive urinalyses has very little relevance, as it would be cumulative, and would, at best, show that he is a user of controlled substances, which does not prove knowledge or intent to distribute. Thus, he argues that the government is simply making a backdoor attempt to introduce evidence of Cole's parolee status and, by implication, his prior drug felony conviction. Contrary to the government's argument, Cole contends that his parolee status is not an integral part of any charged offense and that the urinalyses do not form part of the context of the charged offenses.

### 2. *Analysis*

#### a. *Rule 104*

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of the admissibility of evidence of Cole's prior convictions and other "bad acts" identified in both Cole's motion and the

11

government's Rule 104 motion will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, the court turns to consideration of the admissibility of such evidence in this case.

### b. Rule 404(b)

The parties dispute whether evidence of Cole's prior convictions and prior "bad acts" is admissible pursuant to Rule 404 (b) of the Federal Rules of Evidence. Rule 404(b) provides for the admissibility of prior "bad acts" evidence, including evidence of prior convictions, as follows:

> **(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). The Eighth Circuit Court of Appeals has explained the scope of admissibility of evidence pursuant to Rule 404(b):

> While we have interpreted Rule 404(b) to be a rule of inclusion, *see United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992), this interpretation does not give the government the unhindered ability to introduce evidence of prior crimes. Instead, the evidence of prior crimes must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value. *See United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002).

12

*United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004); *accord United States v. Lakoskey*, 462 F.3d 965, 979-80 (8th Cir. 2006) (reiterating that Rule 404(b) is a rule of inclusion and that evidence is admissible under Rule 404(b) if it satisfies the same four-factor test), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1388 (2007).  Thus, the Eighth Circuit Court of Appeals will reverse admission of purported Rule 404(b) evidence "'only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (quoting *United States v. Thomas,* 398 F.3d 1058, 1062 (8th Cir. 2005), with internal quotations omitted).

Although the court is not unsympathetic to Cole's argument that Rule 404(b) has been turned on its head by making it a rule of inclusion rather than a rule of exclusion, it is well settled law of this Circuit that Rule 404(b) is a rule of inclusion.  *See Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998.  Thus, the real question is whether the anticipated "bad acts" evidence meets the four-factor test set out above.  *Id.*; *Crenshaw*, 359 F.3d at 998.  The court finds that some, but not all, of the "bad acts" evidence at issue here meets this test and is, therefore, admissible at trial.

*i.*      ***Evidence of prior convictions***.  The court will consider first evidence of Cole's prior convictions for drug offenses.   As to the first factor in the test for admissibility of such evidence, relevance to a material issue, *see id.*; *Crenshaw*, 359 F.3d at 979-80, the Eighth Circuit Court of Appeals has "frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense."  *Marquez*, 462 F.3d at 830.  Nevertheless, Cole argues that evidence of prior drug activity is not admissible for the purpose of proving either knowledge or intent, where the defendant denies participation in the charged offense, citing

13

*United States v. Jenkins*, 7 F.3d 803 (8th Cir. 1993). Cole's reliance on *Jenkins* is unavailing, however, because *Jenkins* has been overruled, as the Eighth Circuit Court of Appeals recognized in a case in which a defendant made essentially the same argument that Cole makes here:

> Johnson claims intent, while it may be *an* issue in conspiracy cases, was not *in* issue in his case because he completely denied participation in any conspiracy during one of the pretrial conferences, citing *United States v. Jenkins*, 7 F.3d 803, 807 (8th Cir. 1993) ("When a defendant unequivocally relies on . . . a defense [of denying participation in the alleged crime], evidence of other acts is not admissible for the purpose of proving intent." (quoting *United States v. Ortiz*, 857 F.2d 900, 904 (2d Cir. 1988))). Unfortunately for Johnson, the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), effectively overruled *Jenkins*. *United States v. Hill*, 249 F.3d 707, 712 (8th Cir. 2001) ("*Old Chief* eliminates the possibility that a defendant can escape the introduction of past crimes under Rule 404(b) by stipulating to the element of the crime at issue."); *see Old Chief*, 519 U.S. at 186-87, 117 S. Ct. 644 ("[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."); *see also United States v. Williams*, 238 F.3d 871, 876 (7th Cir. 2001); *United States v. Bilderbeck*, 163 F.3d 971, 977-78 (6th Cir. 1999); *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

*United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006) (emphasis in the original). Thus, under prevailing Circuit law, a trial court does not abuse its discretion by admitting evidence of the defendant's prior bad acts, such as prior drug dealing, to show intent, even if the defendant completely denies participation in the charged offense. *Id.*

The prior drug convictions are also "similar in kind" to the charged offenses here, as they involve precisely the same controlled substances and offenses, possessing with

14

intent to distribute crack cocaine and possessing marijuana, and all of the prior convictions occurred within a few years—indeed, not more than seven years—prior to trial, so that they are not remote in time from the charged offenses. *Lakoskey*, 462 F.3d at 979-80 (second factor); *Crenshaw*, 359 F.3d at 998 (same). The court also finds that the judgments and sentencing orders from Cole's prior convictions provide sufficient evidence to support use of the prior convictions. *Id.* (third factor); *Crenshaw*, 359 F.3d at 998 (same); *see also United States v. Ruiz-Estrada*, 312 F.3d 398, 403-04 (8th Cir. 2002) (the government offered sufficient reliable evidence of a prior conviction in the form of a certified copy of the criminal complaint and a warrant of commitment).

The factor on which Cole focuses his resistance to admission of this evidence, however, is the fourth one, the balance of probative value and prejudice. *Lakoskey*, 462 F.3d at 979-80 (fourth factor); *Crenshaw*, 359 F.3d at 998 (same); *see also Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same), *cert. denied*, 525 U.S. 1089 (1999). Contrary to Cole's contentions, however, the court finds that there is no substantial potential for unfair prejudice as to the evidence of prior convictions in this case. First, the potential for prejudice of such evidence will be mitigated by the limited evidence that the government intends to introduce to prove the prior convictions, consisting only of the judgments and sentencing orders for those offenses. *Cf. United States v. Headbird*, 461 F.3d 1074, 1078 (8th Cir. 2006) (a defendant is not unduly prejudiced where the evidence of prior convictions consists of "little beyond the fact and nature" of the prior offenses). Second, the court will give a limiting instruction reminding the jurors that they may consider this evidence only to prove knowledge and intent, not to decide whether Cole is guilty of the charged offense. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction

15

[concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *United States v. Spears*, 469 F.3d 1166, 1170 (8th Cir. 2006) (also finding a limiting instruction adequate to guard against potential prejudice), *petition for cert. filed* (March 2, 2007) (No. 06-9864); *Marquez*, 462 F.3d at 830 (there was no abuse of discretion in admitting evidence of prior drug convictions where the district court gave such a limiting instruction); *and compare Crenshaw*, 359 F.3d at 1001-02 (the government's actual use of the evidence of a prior conviction did not demonstrate that the evidence was used to prove intent and the court's instruction failed to mention intent as a basis for considering the evidence).

Therefore, evidence of Cole's prior convictions will be admissible at trial.

*ii.* ***Evidence of other "bad acts."*** Application of the four-factor test shows that some of the evidence of Cole's other "bad acts" that the government seeks to introduce, through the cooperating witness and the parole officer, is also admissible under Rule 404(b), but some is not. *See* FED. R. EVID. 404(b) (the rule applies to "wrongs or acts" as well as convictions); *see also United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (applying the same four-factor test for admissibility under Rule 404(b) to drug activity that was not part of a prior conviction). The court will consider separately the "bad acts" evidence that the government intends to offer through these two witnesses.

The cooperating witness will purportedly testify that he had known Cole for a few years; that he lived next door to Cole at the time that the search warrant was executed on or about May 2, 2006; that he had used marijuana and cocaine with Cole at Cole's residence prior to execution of the search warrant; that he had observed Cole selling controlled substances and knew that Cole kept his controlled substances either in the kitchen or the bathroom; that Cole had a black scale; that he knows the source of Cole's controlled substances; and that he observed the traffic coming and going from Cole's

16

residence. Such evidence is probative of Cole's intent and knowledge of drug activity at the residence, for purposes of proving those elements of the possession with intent to distribute, possession, and maintaining premises for drug crimes. *See Frazier*, 280 F.3d at 847 (prior drug activity was relevant to drug-trafficking charges to show intent and knowledge). Moreover, such evidence purportedly involved precisely the same controlled substances allegedly involved in the charged offenses at approximately the time of the charged offenses, so that it was both "similar in kind" and not "remote" from the charged conduct. *Id.* (second factor). Assuming that the government will be able to establish the credibility of the cooperating witness, eye witness testimony concerning drug activity of the defendant is likely to be sufficiently substantial to support admission of the evidence of the defendant's conduct. *Id.* (third factor). Finally, such evidence is not unduly prejudicial, where Cole will have the opportunity to cross-examine the cooperating witness and the court will provide a limiting instruction, if such evidence is not, in fact, direct evidence of the charged criminal conduct, an issue considered in more detail below.

Cole nevertheless argues that the evidence from the cooperating witness that the government seeks to admit is exactly the kind of evidence that this court excluded in *United States v. Harris*, 65 F. Supp. 2d 983 (N.D. Iowa 1999). In *Harris*, this court excluded "bad acts" evidence from cooperating witnesses under the fourth factor in the Rule 404(b) analysis, that the probative value of the evidence was substantially outweighed by its prejudicial value. *See Harris*, 65 F. Supp. 2d at 986. This court explained,

> The proposed evidence would recount over forty separate, uncharged, drug acts and transactions. In the court's view, to present all of this "other acts" evidence, at least in the absence of an entrapment defense, is unduly prejudicial and inflammatory. *See also* FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

17

> prejudice. . . ."). The court is concerned that this conduct
> (which is not the basis for any criminal charge in federal
> court), based solely on its volume, will be misused by the jury
> to convict the defendant simply because he is perceived to be
> a "bad actor." *Cf. [United States v.] Molina,* 172 F.3d
> [1048,] 1054 [(8th Cir. 1999)].

*Harris,* 65 F. Supp. 2d at 986. The "bad acts" evidence from the cooperating witness at

issue in Cole's case, however, is entirely distinguishable. The government has not

suggested, and Cole has not shown, that the testimony from the cooperating witness

allegedly involves so many uncharged drug acts and transactions. Moreover, while the

evidence in question in *Harris* involved "bad acts" that were not the basis for any criminal

charge, as explained below, the cooperating witness's testimony here *may* be "intrinsic"

evidence upon which the charged crime of maintaining premises for drug crimes is, in

part, based and that evidence is probative of the intent and knowledge elements of the

possession with intent and possession offenses also charged. Because the cooperating

witness's evidence here is neither so voluminous nor so unrelated to the charged offenses

as it was in *Harris*, the cooperating witness's testimony in this case has substantially

greater probative value and substantially less potential prejudice than the evidence in

question in *Harris*. Therefore, the cooperating witness's testimony will be admissible at

trial in this case.

The conclusion to be drawn from application of the four-factor test to the question

of the admissibility of the parole officer's testimony—that Cole had two "dirty" urinalyses,

one on January 19, 2006, indicating use of crack cocaine, and one on March 9, 2006,

indicating use of marijuana—is somewhat different. Again, such evidence *of drug use* is

probative of Cole's knowledge concerning drug use and the presence of drugs in the

residence. *Id.* (first factor). It is also similar in kind and not remote in time, as it shows

18

Cole's use of precisely the same controlled substances at issue in the charged offenses just months before the charged offenses allegedly occurred. *Id.* (second factor). The evidence must also be considered sufficient to support Cole's prior use of the controlled substances at issue, *id.* (third factor), not least because it is based on empirical, reliable testing.

The "rub" concerning the parole officer's testimony about the "dirty" urinalyses, however, is whether it is more prejudicial than probative, *see id.* (fourth element), because it introduces evidence that Cole was on parole at the time of the charged offenses and because it may be needlessly cumulative of other evidence. The court is wholly unconvinced by the government's bald assertion that Cole's *parolee status* is somehow relevant, in and of itself, to show knowledge or intent. Indeed, the government's assertion that Cole's parolee status demonstrates his knowledge of restrictions in effect at the time of his new criminal conduct suggests that the government intends to offer the evidence to show Cole's criminal propensity, because his parole restrictions are in no way elements of or probative of the charged offenses. *See Marquez*, 462 F.3d at 830 (evidence is inadmissible pursuant to Rule 404(b) when it clearly has had no bearing on the case and is introduced solely to prove the defendant's propensity to commit criminal acts). Although Cole's parolee status may be relevant to explain why he had been subjected to urinalyses at all, that observation simply begs the question of the probative value and potential prejudicial effect of evidence of the urinalyses themselves.

Ultimately, the court concludes that evidence from the parole officer should be excluded, because the serious potential prejudice arising from the possibility that the jurors might convict Cole of the charged offenses for the unrelated reason that he violated the terms of his parole, rather than on the basis of evidence of charged wrongdoing, exceeds the relatively limited probative value of such evidence, where that evidence is cumulative of other evidence of Cole's drug activities and prior convictions. Certainly, evidence of

19

Cole's parolee status is *not* more probative than any of the prior convictions at issue here, as the government contends, because the prior convictions are not "aged," and Cole's parolee status sheds no light, or no significant light, on Cole's knowledge or intent in committing the charged offenses. Therefore, the parole officer's testimony will *not* be admissible at trial.

### c.     *Res gestae and direct evidence*

The government argues, in addition or in the alternative, that the "bad acts" evidence from the cooperating witness and the parole officer is admissible, without regard to Rule 404(b), because it is "direct" proof of the charged crimes or evidence of the "context" of the charged crimes. As the Eighth Circuit Court of Appeals recently explained, "One of the exceptions to the general rule that evidence of other crimes committed by a defendant is inadmissible is when the proof provides the context in which the charged crime occurred—'the res gestae.'" *United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (citing *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)). More specifically,

> [The Eighth Circuit Court of Appeals has] held that Rule 404(b), which governs the admission into evidence of wrongful conduct other than the conduct at issue, applies "only to 'extrinsic' and not to 'intrinsic' evidence." *United States v. Swinton*, 75 F.3d 374, 377 (8th Cir. 1996). Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. *United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir. 1996). Such evidence is admitted because "the other crime evidence 'completes the story' or provides a 'total picture' of the charged crime." *Id.*

*United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006). However, "'[i]n those cases in which [the Eighth Circuit Court of Appeals has] approved the use of other crimes

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 20 of 46

evidence as an integral part of the context of the crime charged, the other crime evidence was closely or inextricably intertwined with the charged crime.'" *Fleck*, 413 F.3d at 890 (quoting *United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir. 1996)). "'[C]rimes or acts which are "inextricably intertwined" with the charged crime are not extrinsic and Rule 404(b) does not apply.'" *United States v. Adams*, 401 F.3d 886, 899 (8th Cir. 2005) (quoting *United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir. 2000)). Similarly, "direct" evidence of a charged offense, that is, evidence showing a charged crime was committed or establishing an element of a charged crime, is not evaluated under Rule 404(b). *See, e.g., United States v. Evans*, 272 F.3d 1069, 1083 (8th Cir. 2001), *cert. denied*, 535 U.S. 1029 (2002); *United States v. Jones*, 266 F.3d 804, 814 (8th Cir. 2001); *United States v. Maynie*, 257 F.3d 909, 915-16 (8th Cir. 2001), *cert. denied*, 535 U.S. 944 (2002).

The court has no hesitation in concluding that the evidence from the cooperating witness that he lived next door to Cole at the time that the search warrant was executed on or about May 2, 2006; that he had used marijuana and cocaine with Cole at Cole's residence prior to execution of the search warrant; that he had observed Cole selling controlled substances and knew that Cole kept his controlled substances either in the kitchen or the bathroom; that Cole had a black scale; that he knows the source of Cole's controlled substances; and that he observed the traffic coming and going from Cole's residence is closely and inextricably intertwined with the charged crime of maintaining premises for drug crimes. *Johnson*, 463 F.3d at 808 (evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred, because it "completes the story" of the charged crime); *Fleck*, 413 F.3d at 890 (evidence of other crimes or bad acts is admissible when it provides the context in which the charged crime occurred, but such other bad acts must be closely or inextricably intertwined with the charged offense). Indeed, such evidence goes to the heart

of the issue of whether Cole knowingly opened, maintained, managed, controlled, and made available for use his residence for the purpose of unlawfully storing, distributing, and using crack cocaine, all in violation of 21 U.S.C. § 856(a)(1) and (2), so that it is, in the court's view, "direct" evidence of the crime of maintaining premises for drug crimes. *See Evans*, 272 F.3d at 1083 ("direct" evidence of a charged offense is evidence showing a charged crime was committed or establishing an element of a charged crime); *Jones*, 266 F.3d at 814 (same); *Maynie*, 257 F.3d at 915-16 (same). Therefore, in addition or in the alternative to the court's conclusion that the cooperating witness's testimony is admissible pursuant to Rule 404(b) as to all charged offenses, the court now concludes that the cooperating witness's testimony is admissible as res gestae or "direct" evidence of the crime of maintaining premises for drug crimes.

Again, the analysis of the parole officer's testimony is different. The government asserts that evidence that Cole was on parole at the time that he allegedly committed the charged offenses is inextricably intertwined with the charged offenses, because it explains the circumstances surrounding why Cole was subjected to urinalyses and because it demonstrates his knowledge and intent in committing the charged offenses. This argument is wholly unpersuasive. While Cole's parolee status might provide the context for the urinalyses, it is the results of the urinalyses, not Cole's parolee status, that is probative of his knowledge and intent in committing the charged drug offenses, and more to the point, it is the results of the urinalyses that provide context to the charged crimes, not Cole's parolee status. *Fleck*, 413 F.3d at 890 (evidence of other crimes or bad acts is admissible when it provides the context in which the charged crime occurred, but such other bad acts must be closely or inextricably intertwined with the charged offense). Moreover, even if Cole's parolee status were, somehow, relevant to the context of the charged offenses, and not just relevant to the context of the urinalyses, the limited probative value of such

evidence is clearly outweighed by the danger of unfair prejudice from such evidence. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice). Again, evidence from the parole officer should be excluded, because the serious potential that the jurors might convict Cole of the charged offenses for the unrelated reason that he violated the terms of his parole, not because of evidence showing that he committed the charged crimes, exceeds the relatively limited probative value of such evidence, where it is cumulative of other evidence of Cole's drug activities and prior convictions. Therefore, evidence from the parole officer and evidence of Cole's parolee status will *not* be admissible at trial.

## B.  Allegedly Exculpatory Hearsay Statements

In what was actually the government's first motion in limine, the government's April 5, 2007, Motion In Limine Regarding Alleged Statements Against Interest (docket no. 33), the government seeks an order excluding alleged hearsay statements of Maurice Robinson, who was also present at the house in Waterloo at the time that Cole was arrested, to the effect that the crack cocaine seized at the time was actually his, not Cole's. The court will now consider that motion, beginning with a summary of the arguments of the parties.

### 1.  Arguments of the parties

#### a.  The government's argument

The government seeks to exclude evidence, from other witnesses, of Maurice Robinson's purported statements to them that the crack cocaine found in Cole's residence actually belonged to Robinson, on the ground that such purportedly exculpatory hearsay statements are not generally admissible when offered by the defendant and the declarant is available, because such use of a hearsay confession raises concerns about fabrication.

23

The government argues that the alleged declarant, Robinson, is available, because he lives in Waterloo and has, in the past, appeared when subpoenaed. The government also contends that Robinson's testimony would be helpful to the government, because he has already denied making the statements, and thus, the defendant's sole purpose in calling Robinson would be to elicit hearsay under the guise of impeachment by means of an alleged prior inconsistent statement that was not under oath. Calling a witness solely to elicit contrary hearsay testimony from other witnesses is not allowed under Rule 607, the government contends. If the court is inclined to allow such evidence, however, the government requests a hearing, outside the presence of the jury, to determine what, if any, corroborating evidence exists to support the alleged hearsay confessions. Such a hearing, the government argues, would allow the court to assess the veracity of the witness or witnesses testifying to the hearsay and the reliability of the out-of-court declarant.

### b. Cole's response

In his response to this motion, Cole asserts that it is not clear whether, if he appears to testify, Robinson will assert his right against self-incrimination, but if he does so, he will be "unavailable" within the meaning of Rule 804(b)(3), so that his statement against interest will be admissible. On the other hand, if Robinson does not assert his right against self-incrimination, and he testifies that the drugs in the residence were not his, then Cole contends that Robinson's statements to others that the drugs were his are admissible as prior inconsistent statements. Cole argues that Robinson's testimony would not be offered simply to set him up for impeachment, but to explain the events just prior to and surrounding the search of Cole's residence. Cole also argues that the danger of a witness being called just to be set up for impeachment and to avoid the hearsay rule is much smaller when the witness is called by the defendant than it is when the witness is called by the government. Cole also argues that it is not surprising that Robinson denied that the

24

drugs were his in interrogations by law enforcement officers and in grand jury testimony, where the government was not interested in proving that the drugs were his, but Cole argues that Robinson probably would have admitted that the drugs were his if he had actually been interrogated by law enforcement officers as a suspect.

Cole also argues that the hearsay evidence in question is admissible pursuant to the residual hearsay exception in Rule 807, because the evidence of whose drugs were found in the residence is material, and the evidence of a confession of another to ownership of the drugs is more probative than any other evidence that Cole could offer on the question of his innocence. Because Robinson is highly unlikely to admit in open court that the drugs were his, Cole argues that the only alternative is to present evidence that Robinson admitted ownership to other persons. Cole argues that Robinson was more likely to be candid when he made the statement to three other persons shortly after the seizure of the drugs than he was likely to be subsequently when interrogated by law enforcement officers or before the grand jury. Cole also argues that Robinson's confessions to multiple people corroborate each other.

### 2. Analysis

The court finds that the admissibility of the hearsay testimony concerning an alleged confession by Robinson that the drugs found in the residence were his, not Cole's, must be examined in light of Rule 804(b)(3), which pertains to statements against penal interest, and in light of Rules 607 and 613(b), which pertain to prior inconsistent statements for purposes of impeachment. Which rules apply depends upon whether or not Robinson is "unavailable" and, if he appears to testify, what he says about whose drugs were found in the residence.

25

### a. Rule 804(b)(3) analysis

Rule 804(b) of the Federal Rules of Evidence provides that, along with certain other categories of evidence, evidence not excluded by the hearsay rule if the declarant is unavailable includes statements against interest, defined as follows:

> **(3) Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

FED. R. EVID. 804(b)(3). As the government asserts, "[t]his exception to the hearsay rule requires the unavailability of the out-of-court declarant," here Robinson. *United States v. Buffalo*, 358 F.3d 519, 521 (8th Cir. 2004); *accord United States v. Chase*, 451 F.3d 474, 480 (8th Cir. 2006) (noting the unavailability requirement); *United States v. Mendoza*, 85 F.3d 1347, 1352 (8th Cir. 1996); FED. R. EVID. 804(b) ("The following are not excluded by the hearsay rule if the declarant is unavailable as a witness. . . ."). In addition, under this exception, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible . . . 'unless corroborating circumstances clearly indicate the trustworthiness of the statement.'" *Chase*, 451 F.3d at 480 (quoting FED. R. EVID. 804(b)(3)). Thus, as the Eighth Circuit Court of Appeals has explained,

> Before a statement is admitted pursuant to Rule 804(b)(3), a three-prong test must be satisfied:
>
> [I]t must be shown that (1) the declarant is unavailable as a witness, (2) the statement must so far tend to

26

> subject the declarant to criminal liability that a
> reasonable person in the declarant's position would not
> have made the statement unless he or she believed it to
> be true, and (3) corroborating circumstances clearly
> indicate the trustworthiness of the statement.
>
> [*United States v. Hazelett*, 32 F.3d 1313, 1316 (8th Cir.
> 1994)] (quoting *United States v. Riley*, 657 F.2d 1377, 1383
> (8th Cir. 1981)).

*Mendoza*, 85 F.3d at 1351.

Moreover, only portions of a purported confession that are self-inculpatory of the declarant are admissible pursuant to Rule 804(b)(3), because parts that pose no risk to the declarant are not particularly reliable and are, instead, "'just garden variety hearsay.'" *Id.* at 1352 (citing *Williamson v. United States*, 512 U.S. 594 (1994), and quoting *Carson v. Peters*, 42 F.3d 384, 386 (7th Cir. 1994)); *accord Chase*, 451 F.3d at 480 ("Only the portions of an unavailable witness's statement that genuinely inculpate her are admissible," citing *Williamson*, 512 U.S. at 600-01); *Hazelett*, 32 F.3d at 1317-18 ("Those portions [of a declarant's purported confession] which are not in and of themselves against the declarant's penal interest are not admissible," also citing *Williamson*). As the Eighth Circuit Court of Appeals has explained,

> In determining whether a statement is genuinely inculpatory,
> a court must examine the circumstances under which the
> statement was given. [*Williams*, 512 U.S.] at 603-04, 114 S.
> Ct. 2431. A statement is not truly self-inculpatory if it merely
> attempts to shift blame or curry favor. *See id.* at 603, 114 S.
> Ct. 2431; *United States v. Roach*, 164 F.3d 403, 411 (8th Cir.
> 1998). The determination of a declarant's credibility and
> motivation in making a statement is generally within the
> discretion of the district court. *Roach*, 164 F.3d at 411.

*Chase*, 451 F.3d at 480.

*i.* ***Statement against penal interest***.  Here, beginning the analysis with the second requirement for admissibility, whether the statement is actually one against the declarant's interest, and hence, within the scope of the rule, *see Mendoza*, 85 F.3d at 1351; FED. R. CIV. P. 804(b)(3) (defining as not hearsay a statement against interest), according to Cole, the hearsay statement at issue is Robinson's statement, made shortly after Robinson was allowed to leave the residence on the day of the search, to Tasha Pates, Orenthal Jones, and Marcus Wright that the drugs in the residence were his, not Cole's. This statement, if made, is plainly one that would "'so far tend to subject [Robinson] to criminal liability that a reasonable person in [Robinson's] position would not have made the statement unless he . . . believed it to be true.'" *Mendoza*, 85 F.3d at 1351 (second requirement for admissibility pursuant to Rule 804(b)(3), quoting *Hazelett*, 32 F.3d at 1316).  Moreover, the entirety of this statement described by Cole is the "self-inculpatory" portion, so that it would properly fall within the scope of Rule 804(b)(3), although the court has no information about what else Robinson may have said to any of the hearers, so that the court cannot determine whether other portions of Robinson's purported statement would still be excludable.  *See Chase*, 451 F.3d at 480 ("Only the portions of an unavailable witness's statement that genuinely inculpate her are admissible," citing *Williamson*, 512 U.S. at 600-01); *Mendoza*, 85 F.3d at 1352 (same); *Hazelett*, 32 F.3d at 1317-18 (same).  The court also concludes that such a statement is "genuinely" self-inculpatory, at least under the circumstances described by Cole, because there would have been no apparent reason for Robinson to shift blame or curry favor in making the statement to the alleged hearers.  *See id.*; *and compare United States v. Chapman*, 345 F.3d 630, 633 (8th Cir. 2003) (the purported statement against interest implicating the declarant and a third party did not satisfy Rule 804(b)(3), because the declarant had already been caught red-handed with 191 pounds of marijuana, so that he had little, if anything, to lose by

28

confessing and implicating another person); *Mendoza*, 85 F.3d at 1352 (the declarant had agreed to cooperate with authorities after she was caught red-handed with $16,000 in drug money and after being confronted with the arrest of the defendant at the "drop site," so that "she had nothing to lose by implicating him," and "she may reasonably have believed that by implicating [the defendant] she would curry favor with the authorities and lessen her own punishment").

The more difficult requirements for admissibility of the hearsay confession pursuant to Rule 804(b)(3) here are the first and third, unavailability of the declarant as a witness and corroborating circumstances indicating the trustworthiness of the hearsay confession. *Mendoza*, 85 F.3d at 1351 (first and third requirements for admissibility pursuant to Rule 804(b)(3), quoting *Hazelett*, 32 F.3d at 1316). The court will consider those requirements in turn.

    *ii.    Unavailability of the declarant.* Rule 804(a) defines "unavailability" for purposes of Rule 804(b) exceptions as follows:

> **(a) Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant—
>
>     **(1)** is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
>
>     **(2)** persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
>     **(3)** testifies to a lack of memory of the subject matter of the declarant's statement; or
>
>     **(4)** is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
>
>     **(5)** is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay

29

> exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.
>
> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

FED. R. EVID. 804(a). The Eighth Circuit Court of Appeals has recognized that "'[a] good faith attempt to locate and subpoena the witness satisfies the proponent's obligation to demonstrate that the witness is unavailable'" within the meaning of Rule 804(a)(5). *United States v. Harbin*, 112 F.3d 974, 975 (8th Cir. 1997) (quoting *United States v. Flenoid*, 949 F.2d 970, 972 (8th Cir. 1991)). Similarly, a witness who appears but asserts his or her privilege against self-incrimination under the Fifth Amendment to the United States Constitution is, likewise, unavailable under Rule 804(a)(1). *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987). Additionally—if the government were actually interested in pursuing the truth—the government could decide to grant Robinson "use immunity" for his testimony, and only if he still refused to testify upon order of the court in light of such "use immunity" would he be "unavailable." *See* FED. R. EVID. 804(a)(2); *see also United States v. Carlson*, 547 F.2d 1346, 1354 (8th Cir. 1976), *cert. denied*, 431 U.S. 914 (1977).

The court is unable to determine pretrial, however, whether Robinson might be "unavailable" to testify at trial for any of these reasons. Although the court considers it highly likely that Robinson would testify that he did not possess the drugs found in Cole's residence, and unlikely, at least in the absence of use immunity, that he would testify that he possessed those drugs, until and unless he is shown to be "unavailable," Rule 804(b)(3) does not come into play. Thus, whether or not Robinson is "unavailable," and hence,

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 30 of 46

whether his hearsay confession would be admissible pursuant to Rule 804(b)(3), depends, first, upon whether or not he appears to testify at trial and, second, upon whether or not he ultimately will testify to the pertinent matter.

  ***iii. Trustworthiness***. A similar problem prevents pretrial determination of whether or not Robinson's hearsay confession meets the third requirement for admissibility, corroborating circumstances clearly indicate the trustworthiness of the statement. *Mendoza*, 85 F.3d at 1351 (third requirement under Rule 804(b)(3), citing *Hazelett*, 32 F.3d at 1316); *see also Chase*, 451 F.3d at 480 ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible . . . 'unless corroborating circumstances clearly indicate the trustworthiness of the statement.'") (quoting FED. R. EVID. 804(b)(3)). Although Cole asserts that the hearsay statement is corroborated by three hearers, if all three hearers heard the alleged confession at the same time under the same circumstances, those circumstances do little to corroborate or establish the trustworthiness of the hearsay. Thus, until and unless the court is better informed of the circumstances in which each of the witnesses heard the hearsay confession and, indeed, better informed about those witnesses, it cannot assess the trustworthiness of the alleged hearsay confession to determine its admissibility.

  Therefore, the court cannot determine at this time whether or not Robinson's alleged hearsay confession will be admissible at trial.

  ***b. Rule 607 and 613(b) analysis***

  If Robinson testifies at trial to the matter at issue, then Rule 804(b)(3) would be inapplicable, and the question would be whether or not Robinson can be impeached with his purported hearsay confession. The government has represented that it will not call Robinson as a witness in this case, despite having called him to testify before the Grand

Jury.  Thus, if Robinson testifies at all, it will apparently be pursuant to a subpoena from Cole.

If Robinson should testify as Cole's witness, the government contends that it would be improper to allow Cole to elicit from him a denial that the drugs found in the residence were his, as a "set up" to impeach him with his purported prior inconsistent statement to Pates, Jones, and Wright.  Cole asserts that there is no such bar to his impeachment of Robinson with his prior inconsistent statement, citing *United States v. Buffalo*, 358 F.3d 519 (8th Cir. 2004).  The court agrees that the decision of the Eighth Circuit Court of Appeals in *Buffalo* is controlling on this question, so the court will examine that decision in some detail.  However, to set the stage for that discussion, the court must first review Rules 607 and 613(b) of the Federal Rules of Evidence.

     ***i.***     ***The pertinent rules***.  Rule 607 provides, succinctly, that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." FED. R. EVID. 607.  Thus, on its face, Rule 607 appears to permit Cole to impeach Robinson, even if Cole called Robinson as a witness.  Rule 613(b) provides as follows:

> **(b) Extrinsic evidence of prior inconsistent statement of witness.**  Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.  This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

FED. R. EVID. 613(b).  In *Buffalo*, the Eighth Circuit Court of Appeals "consider[ed] the interplay between the ability of parties to impeach their own witnesses, embodied in Rule 607, and Rule 613(b), which allows the admission of prior inconsistent statements of a witness under limited circumstances." *Buffalo*, 358 F.3d at 522.

32

*ii.*    **The** Buffalo *analysis*.  Although the court in *Buffalo* recognized the dangers of admitting a prior inconsistent statement for purposes of impeaching a party's own witness, upon which the government here places particular stress, *see id.*, the court set forth a procedure for managing the prejudicial effect of prior inconsistent statements.  *See id.* at 523-25.  As the court explained,

> In *United States v. Logan*, 121 F.3d 1172 (8th Cir. 1997), this court commented on the potential for abusing the ability to impeach one's own witnesses with prior inconsistent statements.  We noted that "'[c]ourts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury,'" *id.* at 1175 (quoting *United States v. Rogers*, 549 F.2d 490, 497 (8th Cir. 1976)), but we disavowed adherence to any rule that would require trial courts to inquire into the state of mind of the party calling the witness to be impeached.  *Logan*, 121 F.3d at 1175.  In *Logan*, we cited a collection of cases that focus on determining the government's true motive in impeaching one of its own witnesses with a prior inconsistent statement, and we stated that "the relevant question is simply whether the evidence is admissible under Fed. R. Ev. 403."  *Id.*
>
> Indeed, even the Fourth Circuit, which formulated the primary purpose rule in *[United States v.] Morlang*, [531 F.2d 183, 190 (4th Cir. 1975),] has stated that "[f]ederal evidence law does not ask the judge, either at trial or upon appellate review, to crawl inside the prosecutor's head to divine his or her true motivation."  *United States v. Ince*, 21 F.3d 576, 580 (4th Cir. 1994).  Instead, to determine whether testimony of a prior inconsistent statement is a "mere subterfuge" to get before the jury otherwise inadmissible hearsay, "the proper inquiry is whether, as an objective matter and irrespective of the [calling party's] motive, the probative value of a statement for impeaching the credibility of a witness is 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

33

> delay, waste of time, or needless presentation of cumulative
> evidence,' *see* Fed. R. Ev. 403." *Logan*, 121 F.3d at 1175.

*Buffalo*, 358 F.3d at 523-24. Thus, the court concluded that courts must examine the testimony of the witnesses who will present the hearsay confession of another witness to impeach that witness with a statement against his or her penal interest "in light of Rule 403's balancing test." *Id.* at 524. However, the court also determined that the court "must first determine whether [the defendant] met the foundational requirements of a Rule 613(b) prior inconsistent statement." *Id.*

Therefore, this court will examine the admissibility of Robinson's prior hearsay confession, if Robinson testifies at trial and denies ownership of the drugs found in Cole's residence, using the following two-step analysis: (1) the court will first consider whether Cole has met the foundational requirements for admission of the purported prior inconsistent statement by Robinson under Rule 613(b), and if so, (2) the court will examine the testimony of the witnesses that Cole intends to use to impeach Robinson with his purported prior inconsistent statement in light of Rule 403's balancing test. *Id.* at 523-24.

    ***iii.***    ***Foundational requirements for Rule 613(b)***. As the Eighth Circuit Court of Appeals also explained in *Buffalo*,

> Under Rule 613(b), a party seeking to introduce a prior
> inconsistent statement must ordinarily confront the witness
> with the prior inconsistent statement and afford him or her an
> opportunity to explain or deny the inconsistency. *United
> States v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996); *accord
> United States v. Schnapp*, 322 F.3d 564, 571 (8th Cir. 2003)
> ("[E]xtrinsic evidence of a prior inconsistent statement by a
> witness is not admissible unless: (1) the witness is afforded an
> opportunity to explain or deny the statement and the opposing
> party is afforded an opportunity to interrogate the witness
> about the statement or (2) the interests of justice otherwise
> require."). In addition, "under Rule 613(b) a witness may not

34

> be impeached on a collateral matter by use of extrinsic
> evidence of prior inconsistent statements. Contradiction of a
> witness by prior inconsistent statements may be shown only on
> a matter material to the substantive issues of the trial." *Id.*
> (internal citations omitted).

*Buffalo*, 358 F.3d at 524. In *Buffalo*, the court concluded that these foundational requirements had been met, because the hearsay statement "involved matters that were material to the charges against the defendant, and [the defendant] squarely confronted the [witness to be impeached] with his inconsistent statements during direct examination," and the witness to be impeached "denied having confessed or having played any role in the [charged crime]." *Id.*

Here, it is clear that Robinson's alleged hearsay confession that he, not Cole, possessed the drugs found in Cole's residence is, likewise, material to the possession with intent and possession charges against Cole. What the court cannot determine pretrial is whether Cole will squarely confront Robinson with his inconsistent statement to Pates, Jones, and Wright, and whether Robinson will deny that confession or any role in the possession of the crack cocaine or marijuana. *Compare id.* Again, while the court considers it highly likely that Robinson would testify that he did not possess the drugs found in Cole's residence, and unlikely, at least in the absence of use immunity, that he would testify that he possessed those drugs, until and unless Robinson is confronted with his inconsistent statement to Pates, Jones, and Wright, and denies that statement or any role in the offenses charged against Cole, the foundational requirements in Rule 613(b) will not have been met. Thus, the court cannot determine pretrial whether the foundational requirements of Rule 613(b) have been met.

*iv.* ***Rule 403 balancing***. Assuming that Cole meets the foundational requirements of Rule 613(b) at trial, the court will conduct the required Rule 403 balancing

35

inquiry, at least to the extent that it is able to do so pretrial. *See Buffalo*, 358 F.3d at 524 (if the foundational requirements are met, the question of the admissibility of the prior inconsistent statement used against a party's own witness depends upon a Rule 403 balancing inquiry); *see also* FED. R. EVID. 403 (relevant evidence may be excluded if "its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by undue delay, waste of time, or needless presentation of cumulative evidence"). In *Buffalo*, the court noted, "'When the prosecution attempts to introduce a prior inconsistent statement to impeach its own witness, the statement's likely prejudicial impact often substantially outweighs its probative value for impeachment purposes because the jury may ignore the judge's limiting instructions and consider the "impeachment" testimony for substantive purposes,'" and that this danger was "'multiplied when the statement offered as impeachment testimony contains the defendant's alleged admission of guilty.'" *Id.* (quoting *United States v. Ince*, 21 F.3d 576, 581 (4th Cir. 1994)). Consequently, the court advised that "'a trial judge should rarely, if ever, permit the Government to "impeach" its own witness by presenting what would otherwise be inadmissible hearsay if that hearsay contains an alleged confession to the crime for which the defendant is being tried.'" *Id.* (again quoting *Ince*). In contrast, the court found, "When the defendant seeks to introduce a prior inconsistent statement for impeachment purposes, the dangers identified above are not implicated. Simply put, the prejudicial impact of the statement does not endanger the defendant's liberty by risking a conviction based on out-of-court statements that are not subject to confrontation by way of cross-examination." *Id.* (internal citations omitted).

In the case before it, the court in *Buffalo* found that, in what it described as "unique circumstances," the prior inconsistent statement of a witness was offered by the defendant to bolster his alibi defense and that the "obvious risk" of misuse of the prior inconsistent

36

statement by the jury as substantive evidence could be minimized by a limiting instruction. *Id.* at 525. The court also noted that, while it was not specifically a Rule 403 factor, the defendant had offered significant corroboration of the impeaching witnesses' testimony. *Id.* at 526. Therefore, the court concluded that the trial court had abused its discretion by excluding evidence of the witness's prior inconsistent statement. *Id.* 527.

While the case before this court does not present precisely the same "unique circumstances" found in *Buffalo*, this case nevertheless involves the "unique circumstance" of what the defendant believes is clearly exculpatory evidence in the form of a hearsay confession by a potential witness that it was the witness, not the defendant, who possessed the drugs that the defendant is charged with possessing. *Cf. id.* 525. Such evidence would clearly bolster his anticipated defense that he did not possess the drugs and did not participate in the offenses charged. *Cf. id.* While there is still an obvious risk that the jury might use Robinson's prior inconsistent statement as substantive evidence that Robinson, not Cole, possessed the drugs in question, a limiting instruction explaining that the jury can only consider Robinson's prior confession to possession of the drugs for the purpose of determining whether or not to believe Robinson's expected inconsistent assertion that he did not possess the drugs and otherwise to determine the credibility of Robinson's testimony. *Cf. id.* The value of the hearsay confession, obviously, would be bolstered by evidence corroborating the impeaching witness's testimony, *see id.* at 526, but the court observed above that it could not determine the trustworthiness of the impeaching witnesses' testimony pretrial. For now, therefore, the court can only rule that, if Robinson testifies and denies possession of the drugs in question, upon being confronted with his prior inconsistent statement, it is *likely* that the court will allow Cole to introduce Robinson's prior inconsistent statements through testimony of Pates, Orenthal, and Wright.

37

### 3. *Summary*

In light of the court's conclusions that Robinson's purported hearsay confession may be admissible, either pursuant to Rule 804(b)(3), if he does not testify, or pursuant to Rules 607 and 613(b), if he does testify, the court will deny the government's April 5, 2007, Motion In Limine Regarding Alleged Statements Against Interest (docket no. 33), but without prejudice to challenges to the evidence in question at trial. It will be necessary, however, for Cole to establish that Robinson is "unavailable" within the meaning of Rule 804 or, instead, to meet the foundational requirements of Rule 613(b) and to establish the trustworthiness of the hearsay testimony before such hearsay will be admissible. These requirements will need to be established outside of the presence of the jury at the appropriate point in the trial.

The court cannot help observing that it is very disturbed by the government's filing and argument in support of this motion. The government did not cite the decision in *Buffalo*, which is clearly on point and controlling. Still more disturbing, however, is the gamesmanship in the government's assertion that it will not call a witness, Robinson, who clearly has relevant information about the circumstances surrounding the crimes charged against Cole—because Robinson was at the residence at the time of the search on May 2, 2006, and the government has used Robinson to testify to the grand jury—then turn around and argue that, because Cole must call Robinson if he wants his testimony, Cole cannot attempt to impeach Robinson with what appears to be a prior inconsistent statement that would exculpate Cole on some of the charges. Indeed, the court agrees with Cole that Robinson's testimony is relevant for purposes other than to impeach him with his prior inconsistent statement, because, for example, it would explain the events just prior to and surrounding the search of Cole's residence. The court knows from experience that the government would not hesitate to use any witness's statement that Cole *did* commit the

38

charged offenses, no matter how unreliable, so that it is clear to the court that the government has lost interest in what is supposed to be its primary duty: to seek truth and justice, not convictions of criminal defendants at any cost. If the government had any real interest in determining the truth of the matter, the government would make every effort to put Robinson on its witness list and, if necessary, would grant him use immunity to obtain his truthful testimony at trial.

### C. Cocaine Base And Crack Cocaine

On April 23, 2007, the government filed its third evidentiary motion now before the court, its Motion In Limine Re: Cocaine Base And Crack Cocaine (docket no. 49), seeking an order excluding evidence or legal argument that the cocaine base that will be introduced at trial is not "crack cocaine." The court's analysis of this motion, once again, begins with a summary of the parties' arguments.

#### 1. Arguments of the parties

##### a. The government's argument

The government asserts that Cole intends to inject the question of whether or not the cocaine base found at his residence is "crack cocaine" only to confuse the jury. Therefore, the government contends that evidence and argument on this issue should be excluded pursuant to Rule 403. Somewhat more specifically, the government argues that the Eighth Circuit Court of Appeals has held that "cocaine base" within the meaning of 21 U.S.C. § 841 means "crack," citing *United States v. Crawford*, 83 F.3d 964, 966 (8th Cir. 1996), and that "cocaine base" is synonymous with "crack cocaine," citing *United States v. Robinson*, 455 F.3d 832, 833 n.2 (8th Cir. 2006). Here, the government contends that the Division of Criminal Investigation (DCI) laboratory report, which will be introduced into evidence at trial, finds that the substance seized at Cole's residence was cocaine base,

and that the government will also introduce the off-white, rocky, chunky substance itself. The government apparently suggests that this evidence is sufficient to show that the "cocaine base" is "crack cocaine." Because there is no evidence that the "cocaine base" at issue is some other form of cocaine other than "crack cocaine," the government contends that Cole should not be permitted to make an argument that will only confuse the jury.

### b. Cole's response

In his resistance to this motion, Cole argues that the DCI laboratory report simply identifies the substance in question as "cocaine base," but that the decision of the Eighth Circuit Court of Appeals in *Crawford* makes clear that "cocaine base" as used in 21 U.S.C. § 841 is intended to refer only to "crack," which is the smokable form of cocaine made by dissolving cocaine hydrochloride in water and baking soda and reducing it to a solid substance. Cole argues that the decision in *Crawford* was based, in turn, on a decision of the Seventh Circuit Court of Appeals in *United States v. Booker*, 70 F.3d 488 (7th Cir. 1995), *cert. denied*, 517 U.S. 1111 (1996), and that the two decisions make clear that there are several kinds of cocaine base, but only the form of cocaine base that is properly described as "crack" triggers higher sentencing liability. Because the Seventh Circuit Court of Appeals recently affirmed its analysis in *Booker* in *Edwards*, 397 F.3d 570 (7th Cir. 2005), Cole asserts that the Eighth Circuit Court of Appeals is also likely to adopt the conclusions in *Edwards*. Cole points out that the decision in *Robinson*, which the government also relies on, was addressing the "well-worn" argument that cocaine base is the same as cocaine, but did not consider whether all cocaine base is "crack." Cole also distinguishes the other decisions cited by the government on the ground that he is not seeking to exclude the laboratory report. Finally, Cole argues that the government's contention that there is no evidence that the cocaine base seized from his residence is

40

anything other than "crack," so that Cole should not be allowed to argue that the substance was not "crack," is an improper attempt to shift the burden to him to prove that the cocaine base seized is *not* "crack."

### 2. Analysis

#### a. "Cocaine base" within the meaning of § 841

The court notes that 21 U.S.C. § 841 nowhere mentions "crack cocaine" as a basis for enhanced sentences; rather, the statute is cast entirely in terms of "cocaine base." *See* 21 U.S.C. § 841. Also, the Eighth Circuit Court of Appeals has repeatedly held that "cocaine base" within the meaning of 21 U.S.C. § 841 is synonymous with "crack cocaine," as the government contends. *Robinson*, 455 F.3d at 834 n.2 (citing *United States v. Vesey,* 330 F.3d 1070, 1073 (8th Cir. 2003); *United States v. Crawford,* 83 F.3d 964, 965-66 (8th Cir. 1996); *United States v. Jackson,* 64 F.3d 1213, 1216-20 (8th Cir. 1995), *cert. denied*, 516 U.S. 1137 (1996)). That conclusion, however, hardly addresses Cole's contention that not all "cocaine base" is "crack cocaine" triggering higher sentencing liability under 21 U.S.C. § 841.

In *Vesey*, however, the Eighth Circuit Court of Appeals found that "[a]lthough [21 U.S.C. § 841] distinguishes between cocaine and cocaine base, it does not distinguish between subtypes of cocaine base or state explicitly that it applies only to 'crack' cocaine." *Vesey*, 330 F.3d at 1073 (internal citations omitted; citing *Crawford*, 83 F.3d at 966, for the first proposition, and *Booker*, 70 F.3d at 489, for the second). This conclusion would seem to torpedo Cole's argument that the government must prove that the "cocaine base" seized from his residence was "crack," because it suggests that, under the statute, any of the subtypes of "cocaine base" fall within the meaning of "cocaine base" in § 841, not just the subtype identified as "crack."

41

Nevertheless, the court finds that the next section of the decision in *Vesey* is the part that is critical here:

> An amendment to the United States Sentencing Guidelines, effective November 1993, defines "cocaine base" as "crack." *Booker,* 70 F.3d at 489 (citing U.S.S.G. § 2D1.1; U.S.S.G.App. C, Amendment 487). *Although "crack" technically is one form of "freebase cocaine," it is the predominant form and that which the statute intended to proscribe. Id.* at 492. The statute and our case law use the more generic term "cocaine base" synonymously with the term "crack." *See generally United States v. Johnson,* 318 F.3d 821 (8th Cir. 2003); *United States v. White,* 81 F.3d 80 (8th Cir. 1996).

*Vesey*, 330 F.3d at 1073 (emphasis added). Thus, in the Eighth Circuit, the "cocaine base" that § 841 proscribes is "crack cocaine" as defined in U.S.S.G. § 2D1.1,[3] and *only* that form of "cocaine base."[4]

_____

[3]U.S.S.G. § 2D1.1, Note (D) to Drug Quantity Table, states, "'Cocaine base,' for purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form."

[4]The government cites *Vesey* for the proposition that "cocaine base" is synonymous with "crack," so that all "cocaine base" must be "crack," apparently without realizing that its analysis of what *Vesey* holds is backwards: According to *Vesey*, "cocaine base," within the meaning of § 841 is synonymous with only *one* subtype, "crack." Cole is equally mistaken in his attempt to distinguish the decision in *Vesey* on the basis that it involved the question of whether or not to exclude a laboratory report, apparently under the misapprehension that *Vesey* supports the government's position. Notwithstanding Cole's attempt to distinguish a decision that is ultimately in his favor, the court finds that the conclusion in *Vesey* that "crack" is the predominant form of "cocaine base" and that which § 841 was intended to proscribe is not only consistent with Cole's argument, but dispositive of the issue in his favor.

(continued…)

42

### b. *Probative value versus prejudice and confusion*

Nor is the court convinced that it is more prejudicial or confusing to the jury than probative of an issue in the case to allow Cole to offer evidence or argument that the substance in question was not the controlled substance that he was charged with possessing with intent to distribute, because it was not or has not been proved to be "crack." As the Eighth Circuit Court of Appeals has explained, "The offense of possession with intent to distribute [crack cocaine] consists of two elements: knowing possession of crack cocaine and intent to distribute it."[5] *United States v. Barrow*, 287 F.3d 733, 736 (8th Cir. 2002). Thus, the government must prove that Cole actually possessed the controlled substance charged in the Indictment and proscribed by the statute. As explained above, that means that the government must prove that Cole possessed with intent to distribute "crack cocaine" as defined in U.S.S.G. § 2D1.1. Moreover, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, if the government wishes to seek enhanced maximum

---

[4](...continued)
The court also finds that *Vesey* is dispositive of the government's motion in limine here, not merely *dicta* on the point at issue here, even though the question in *Vesey* was whether a laboratory report should be excluded, because the determination in *Vesey* that "cocaine base" under § 841 means *only* "crack" was essential to and dispositive of the determination of the admissibility of the laboratory report. *See Vesey*, 330 F.3d at 1073.

[5]Although Cole is actually charged with possessing with intent to distribute cocaine base within 1,000 feet of a school, the additional element of proximity to a school does not change the elements that pertain to possession with intent to distribute. *See, e.g., United States v. Landers*, 417 F.3d 958, 964 (8th Cir. 2005) (the elements of the offense of possession with intent to distribute crack cocaine within 1,000 feet of a school require the government to prove that there was a public school within 1,000 feet of where the defendant was possessing with intent to distribute crack cocaine). Moreover, the parties indicated in their Joint Proposed Jury Instructions that they had reached a stipulation that Cole's residence was within 1,000 feet of a school, so that the "proximity" element is not in dispute.

43

penalties based on the distinction between "cocaine" and "cocaine base" within the meaning of 21 U.S.C. § 841 (which means the difference between "cocaine" and "crack"), then the burden is on the government to prove that the offense involved the form of cocaine base that invokes such enhanced penalties. The government bears the burden of proving beyond a reasonable doubt the elements of the offense and all facts necessary for enhanced maximum penalties; Cole does not have the burden to produce any witnesses or evidence. A reasonable doubt as to whether the controlled substance found in the residence was, in fact, "crack" can arise from the prosecution's lack of evidence. *See, e.g., United States v. Kime*, 99 F.3d 870, 877 (8th Cir. 1996) (an instruction that a reasonable doubt is one that fairly and naturally arises from the evidence or lack of evidence produced by the government is legally correct, and may be useful, but is not necessarily required, if other instructions effectively communicate the point), *cert. denied*, 519 U.S. 1141 (1997). Thus, the purported lack of evidence that the controlled substance found in the house was not "crack" simply does not excuse the government from meeting its burden of proof and does not preclude the defendant from offering evidence or argument that the controlled substance in question here was not the controlled substance charged in the Indictment or proscribed by the statute for purposes of enhanced maximum penalties. To put it another way, putting the government to its burden of proof simply is not sufficiently confusing or misleading to the jury to warrant exclusion of evidence or argument probative of a key element of the government's proof, which is the nature of the controlled substance found in the residence, so that such evidence or argument is not excludable under Rule 403.

Therefore, the government's April 23, 2007, Motion In Limine Re: Cocaine Base And Crack Cocaine (docket no. 49) will be denied.

44

### III.  CONCLUSION

Upon the foregoing, the court concludes as follows:

1.      Cole's April 1, 2007, Motion In Limine (docket no. 32), in which he seeks an order excluding evidence of his prior drug convictions and alleged drug activities, is **granted in part and denied in part**.  The motion is **granted** as to evidence from Cole's parole officer concerning his urinalyses, but is **otherwise denied**.

2.      The government's April 5, 2007, Motion In Compliance With Federal Rule of Evidence 104(a) Regarding Government's Request For Pre-Trial Ruling On Admissibility Of Evidence (docket no. 34; stricken and refiled on April 13, 2007, as docket no. 42), in which the government seeks leave to present evidence of the same prior convictions and alleged drug activities that Cole seeks to exclude, as well as other evidence of similar conduct, is also **granted in part and denied in part**.  The motion is **denied** as to evidence from Cole's parole officer concerning his urinalyses, but is **otherwise granted**.

3.      The government's April 5, 2007, Motion In Limine Regarding Alleged Statements Against Interest (docket no. 33), in which the government seeks an order excluding alleged hearsay statements of Maurice Robinson, is **denied without prejudice** to challenges to the evidence in question at trial, and proceedings outside the presence of the jury during the trial will be required to determine the admissibility of the evidence in question.

4.      The government's April 23, 2007, Motion In Limine Re:  Cocaine Base And Crack Cocaine (docket no. 49), in which the government seeks an order excluding

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 45 of 46

evidence or legal argument that the "cocaine base" that will be introduced at trial is not "crack cocaine," is **denied**.

**IT IS SO ORDERED.**

**DATED** this 30th day of April, 2007.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

Case 6:06-cr-02046-MWB   Document 57   Filed 04/30/07   Page 46 of 46